CONTINENTAL LIFE INS. CO., Respondent, v. BARNES, et al, Appellants.

(228 N. W. 809.)

(File No. 6679. Opinion filed January 31, 1930.)

*Gardner & Churchill* and *McCoy & McCoy,* all of Huron, for Appellants.

*Sutherland, Payne & Linstad,* of Pierre, for Respondent.

BURCH, J. This is an action on a written guaranty signed by the defendants in words and figures as follows, omitting attestation and signatures: "In consideration of the deposit of Two Thousand by the First National Life Insurance Company of Pierre, S. D., in the Driscoll State Bank, of Driscoll, N. D., we hereby guaranty the payment of all certificates of deposit given the said Driscoll State Bank, to the said First National Life Insurance Company, and all such certificates that may be given during the years, 1921 and 1922." Plaintiff has succeeded to the rights of the First National Life Insurance Company, named therein. The guarantors, defendants herein, were all stockholders of the Driscoll State Bank named in the instrument. O. T. Billington was the cashier

and active managing officer of the bank. Barnes was president, but not in active charge. All but Billington were residents of this state living at or near Huron. The First National Insurance Company had an arrangement with Billington whereby he was to assist their agents in writing insurance at Driscoll, N. D., and for which he received compensation. The bank by the same arrangement received deposits from time to time depending on the amount of insurance written. This arrangement had been followed and acted upon for a considerable time before the guaranty was executed and several deposits had been made thereunder. For each deposit a certificate of deposit was issued to the insurance company. In time the insurance company seems to have become unwilling to continue the arrangement unless its deposits were secured. A conference between one Martindale, agent of the company, and Billington resulted in an effort on the part of Billington to secure a guaranty satisfactory to the company. Martindale wrote out a form of guaranty which he thought would satisfy the company, and Billington sent it to Barnes to be executed by him and other stockholders of the Driscoll bank. The form prepared by Martindale was not signed or returned, and in time Billington went to Huron to find out what the trouble was, and while there learned that the stockholders at Huron would not sign the guaranty prepared by Martindale, so the instrument in suit was prepared and signed and given to Billington to be forwarded to the company in the hopes it would be acceptable. There is testimony that Billington said, if the instrument was accepted, the signers would be notified, but we do not deem this material. It is plain from the record that either guaranty, the one prepared by Martindale or the one substituted, must be acceptable to the officers of the company at Pierre. Billington took the signed guaranty with him to Driscoll, N. D., and from there sent it to the company at Pierre and immediately drew on the company for $2,000. The draft was honored, but the company did not notify any of the guarantors of the acceptance of the guaranty, except as honoring of the draft may have constituted notice of acceptance. The trial court directed a verdict in favor of plaintiff, and defendants appeal from the judgment and an order denying a new trial.

The principal contention is that, until acceptance by the company and notice of such acceptance given to each signer, the trans-

action was not completed and constituted only an offer to guaranty. Appellants in their argument lay stress on the fact that the form prepared by Martindale was not acceptable to the stockholders, and that they refused to sign it, but prepared and signed another as a counter offer, and for that reason were entitled to notice of acceptance where they would not have been entitled to such notice if the Martindale form had been signed. They seem to practically concede that notice would not have been necessary if they had signed the form prepared by Martindale. But we fail to see a reason for the distinction. Neither could bind the company until received and accepted by the officers of the company at Pierre. Martindale did not claim authority to bind the company. The signers might more confidently expect acceptance in the one case perhaps, but acceptance was not assured in either case. No one was bound until acceptance by the company. If notice was not necessary in the one case we see no reason why it should be in the other.

The instrument on its face purports to be a guaranty and not an offer to guaranty. It purports to be made upon a present consideration which was paid to and accepted by the bank.

Section 1479, R. C. 1919, provides: "A mere offer to guaranty is not binding until notice of its acceptance is communicated by the guarantee to the guarantor; but an absolute guaranty is binding upon the guarantor without notice of acceptance."

The preceding section 1478, subd. 2, provides that the promise is an original obligation: "Where the creditor parts with value or enters into an obligation, in consideration of the obligation in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made his surety."

Both in its terms and the circumstances under which the guaranty was given in this case the instrument is an original obligation governed by the usual rules of contract as to acceptance. Paying the consideration, retaining the instrument, and acting thereunder was an acceptance of the offer to enter into an original obligation, and both contracting parties were bound by the terms of their agreement. In Deering & Co. v. Mortell, 21 S. D. 159, 110 N. W. 86, 16 L. R. A. (N. S.) 352, a note to the case in L. R. A. referring to the many apparently diverse and contradictory opinions of the courts as to the necessity of notice, concludes that the contra-

dictions arise not from an unsettled condition of the law, since the legal principles involved are stated with substantial uniformity, but because of confusion in applying the principles to the facts. The difficulty lies in defining the extent of the contract and in determining whether it is an absolute or collateral undertaking. The note contains a clear review of the principles and their proper application. What constitutes an absolute guaranty is well illustrated.

The contract here involved does not seem to present any difficulty in its application to the facts. As before mentioned appellants seem to admit that, if they had signed the form prepared by Martindale and sent it to the company, they would have been bound upon an absolute guaranty without notice of its acceptance. Yet that form could hardly have been more absolute in its text than is the one in suit. If this is not equally binding without notice of acceptance, it must be because of the circumstances of its execution and delivery. What are those circumstances? Appellants lay stress on the testimony of Mall and Elwell, to the effect that Billington said the instrument was not what the company wanted, but he would send it in and see if it would be considered, and, if accepted, they (the guarantors) would be notified. But Billington was not the company's agent to procure the guaranty. He was the agent of the guarantors to effect acceptance, and all were agents of the bank in an effort to secure deposits. There does not seem to be any more reason for holding the guaranty a collateral undertaking than there would be for holding a note a collateral undertaking if one had been given for a loan to the bank. But it is argued that the mere retention of the guaranty and deposit thereafter of $2,000 is not evidence of acceptance, because the company theretofore had been making similar deposits without security and the guarantors could not know that the company had changed its former course and were then making deposits on the security of the guaranty. This is fanciful when it is considered the company had declined to make further deposits without security, and thereafter Billington had made a special trip to Huron to inform appellants of the need of such deposits and his inability to procure them without security. None of the circumstances support appellants' contention, but on the contrary they are such as to plainly establish the intention of the guarantors to give an original undertaking. That such undertakings are binding without notice of

acceptance and as illustrative of such contracts we cite: Birken v. Tapper, 45 S. D. 600, 189 N. W. 698, 24 A. L. R. 832; Conley v. Seligman, 47 S. D. 239, 197 N. W. 293; Wenzlaff v. Tripp State Bank, 50 S. D. 6, 208 N. W. 222; Doud v. National Park Bank, 4 C. C. A. 607, 54 F. 846, 2 U. S. App. 655; Davis v. Wells Fargo & Co., 104 U. S. 159, 26 L. Ed. 686; Buhrer v. Baldwin, 137 Mich. 263, 100 N. W. 468; Emerson Mfg. Co. v. Tvedt, 19 N. D. 8, 120 N. W. 1094; Hibernia Bank v. Cancienne, 140 La. 969, 74 So. 267, L. R. A. 1917D, page 402; National City Bank v. Zimmer Vacuum Renovator Co., 132 Minn. 211, 156 N. W. 265, 267; Valley National Bank v. Cownie, 164 Iowa, 421, 145 N. W. 904; Mamerow v. National Lead Co., 98 Ill. App. 460, affirmed in 206 Ill. 626, 69 N. E. 504, 99 Am. St. Rep. 196; Hirning v. Jacobsen, 51 S. D. 270, 213 N. W. 505; Sanders v. Etcherson, 36 Ga. 404; Grandt on Suretyship and Guaranty, § 213 (3d Ed.); see note in 16 L. R. A. (N. S.) p. 357.

Finding no prejudicial error in the record, the judgment and order appealed from are affirmed.

BROWN, P. J., and POLLEY, SHERWOOD, and CAMPBELL, JJ., concur.